IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ADMIRAL INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:24-cv-04294 |
| v. | ) | |
| | ) | |
| LAKEVIEW COMMONS TOWNHOMES | ) | |
| CONDOMINIUM ASSOCIATION and | ) | |
| IDIL OZER, | ) | |
| | ) | |
| Defendants. | ) | |

**ADMIRAL INDEMNITY COMPANY'S**
**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff Admiral Indemnity Company ("Admiral"), by its attorneys, Litchfield Cavo LLP, and pursuant to 28 U.S.C. § 2201 seeks declaratory judgment and other relief against Defendant Lakeview Commons Townhomes Condominium Association and Defendant Idil Ozer. In support thereof, Admiral states as follows:

**NATURE OF THE ACTION**

1.      This is an action for declaratory judgment by Admiral seeking a declaration pursuant to 28 U.S.C. § 2201 regarding insurance coverage sought by Lakeview Commons Townhomes Condominium Association in connection with underlying claims asserted against it by Idil Ozer in the lawsuit styled as *Idil Ozer v. Lakeview Commons Townhomes Condominium Association, et al.*, Case No. 2018 L 011776 in the Circuit Court of Cook County, Illinois (the "Underlying Lawsuit").

2.      Through this Complaint, Admiral requests that the Court issue a judgment declaring that the policies of insurance issued by Admiral do not require that Admiral continue to defend Lakeview Commons Townhomes Condominium Association or to indemnify Lakeview Commons

Townhomes Condominium Association in connection with the Underlying Lawsuit. This judgment is requested to determine an actual controversy between Admiral and Lakeview Commons Townhomes Condominium Association regarding the parties' rights and obligations under the subject insurance policies.

## PARTIES, JURISDICTION AND VENUE

3.     Plaintiff Admiral Indemnity Company is citizen of Delaware and New Jersey as it is a Delaware corporation with its principal place of business located in New Jersey.

4.     Defendant Lakeview Commons Townhomes Condominium Association (the "Association") is an Illinois citizen as it is an Illinois not-for-profit corporation owning the condominium building located in Chicago, Illinois.

5.     At all relevant times, Defendant Idil Ozer ("Ozer") was an Illinois citizen and the owner of a three-story, residential townhome condominium unit, commonly known as Unit 1701 W. Diversey Parkway in Chicago, Illinois. Admiral seeks no relief against Defendant Idil Ozer other than to bind her to the outcome of this coverage action.

6.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 in that it arises between citizens of different states and the amount in controversy, including the combined cost of defense and alleged liability in the underlying case, exceeds the sum or value of $75,000.00, exclusive of interest and costs. In addition, this action is brought pursuant to 28 U.S.C. § 2201.

7.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a) and (b), because, at all relevant times, Defendant Lakeview Commons Townhomes Condominium Association and Defendant Idil Ozer resided in this District and because the events giving rise to the insurance coverage dispute took place in this District.

2

## FACTUAL BACKGROUND

### The Underlying Lawsuit

8.      Through the Underlying Lawsuit, Ozer sought damages relating to alleged property damage and for illness allegedly caused by mold exposure.

9.      Ozer sued the Association as well as Peak Properties and Westward Management, Inc. ("Westward Management") the property managers for the Association during the time period at issue in the Underlying Lawsuit.

10.      Ozer initiated the Underlying Lawsuit by filing her original complaint on or about October 30, 2018.

11.      Over the course of litigation of the Underlying Lawsuit, through counsel, she amended her complaint several times.

12.      The final complaint filed in the Underlying Lawsuit, the Amended Fourth Amended Complaint at Law (the "Complaint"), was filed on November 15, 2023.  See Exhibit A, a copy of the Amended Fourth Amended Complaint at Law.

13.      According to the Complaint, Ozer owned Unit No. 1701 on the condominium property located at and around 1701 West Diversey Parkway in Chicago, Illinois (the "Property").

14.      Ozer alleged that the Association was responsible for the operation, care, upkeep, maintenance, replacement and improvement of the common elements of the Property, including the roofs, exterior walls and structural parts of the improvements on the Property, wherever located.

15.      Ozer claimed that she notified Peak Properties and the Association throughout 2013 and 2014 concerning the water leakage from her roof into her unit and requested that repairs be undertaken to abate the problem.

16. Ozer claimed that, beginning in late 2013, she began to experience unexplained pain, fatigue and difficulty walking, the cause and diagnosis of which her physicians were unable to determine.

17. Ozer alleged that she learned in December 2016 that mold testing revealed the presence of toxic mold in her home.

18. Ozer alleged that, by June 2017 further mold infestation was found in her home.

19. Ozer alleged that, on December 20, 2017, the Association was notified by one of her doctors that she had a serious mold allergy and that care should be taken to remove mold from her home before she moved back in.

20. Ozer claimed that, throughout 2017 and 2018, her physical condition continued to deteriorate and that she was hospitalized on numerous occasions.

21. Ozer alleged that her physicians determined that her illness was causally related to mold exposure in her home.

22. Count I of the Complaint stated a cause of action against the Association based on its alleged negligence.

23. Under Count I, Ozer alleged that the Association had a duty to exercise reasonable and ordinary care and diligence in the execution of their duties and obligations under the Condominium Property Act and the Declarations, including but not limited to, obligations to locate and repair sources of water intrusion into her unit from the common elements of the Property.

24. Ozer further alleged in Count I that the Association had a duty to refrain from willful and wanton conduct including, but not limited to, refraining from acting with an utter indifference or conscious disregard toward Ozer with respect to maintenance and repair of the

common and limited common elements of the Property occupied by Ozer and its obligation to locate and repair sources of water intrusion into her home.

25.     Ozer claimed that, notwithstanding its duties, the Association breached its duties, was negligent, and acted with utter indifference and/or conscious disregard toward her in one or more ways.

26.     Ozer alleged that, as a result of one or more of the acts or omissions by the Association, her property was damaged and she became ill and contracted a disabling condition and suffered damages including but not limited to:  a. past and future medical expenses; b. past and future emotional distress; c. past and future pain and suffering; d. past and future loss of a normal life; e. property damage and expenses to correct such damage; f. loss of use and occupancy of Unit 1701; and g. costs associated with relocation and maintenance of alternative living quarters.

27.     Based on such alleged damages and injuries, Ozer sought judgment through Count I against the Association for a sum in excess of $50,000 as well as punitive damages based on the Association's allegedly willful and wanton conduct.

28.     Count II of the complaint stated a cause of action against the Association based on its alleged breach of fiduciary duties owed to Ozer.

29.     The allegations for Count II include those stated in Count I.

30.     Ozer additionally alleged under Count II that, under the Condominium Property Act, the Association is required to exercise a fiduciary duty toward the individual unit owners and to act in a manner reasonably related to the exercise of their fiduciary duty and refrain from willful and wanton conduct, and that the failure to do so results in liability.

31.     Ozer alleged that the Association breached its fiduciary duty owed to her, failed to act in a reasonable manner in the exercise of that duty, and was willful and wanton.

32.     Ozer contended that, as a result of the breaches of or acts inconsistent with the Association's fiduciary duty, her property was damaged, she became ill and suffered damages, including but not limited to: a. past and future medical expenses; b. past and future emotional distress; c. past and future pain and suffering; d. past and future loss of a normal life; e. property damage; f. loss of use and occupancy of Unit 1701; g. inspection and repair costs; and h. costs associated with relocation and maintenance of alternative living quarters.

33.     Based on such alleged damages and injuries, Ozer sought judgment through Count II against the Association for a sum in excess of $50,000 as well as punitive damages based on the Association's willful and wanton conduct.

34.     During the course of litigation of the Underlying Lawsuit, Ozer withdrew all claims against the Association for lost wages.

35.     On August 29, 2022, the trial court granted the Association's motion for summary judgment, dismissing Ozer's property damage claims in the Underlying Lawsuit.

36.     As of the court's August 29, 2022 decision, the only remaining claims against the Association under Count I and Count II were Ozer's personal injury claims.

37.     A jury trial was held in the Underlying Lawsuit in April 2024.

38.     Judgment was rendered against the Association on April 29, 2024 on Ozer's mold-related personal injury claims under Count I and Ozer was awarded compensatory damages in the amount of $1,008,000 and punitive damages in the amount of $50,000.

39.     Ozer's claims under Count II were dismissed by court order of May 6, 2024.

**Notice of Claim and Admiral's Defense of the Association**

40.     Notice of Ozer's allegations and claims against the Association was first provided to Admiral on or about November 28, 2018, following the filing of her original complaint.

41.     Following its evaluation of the allegations of Ozer's original complaint and the terms of the policies of insurance issued to the Association, Admiral determined that it would provide the Association with a defense with respect to the Underlying Lawsuit subject to a reservation of rights.

42.     Admiral's first coverage and reservation of rights letter was sent to the Association on or about February 13, 2019.  See Exhibit B, a copy of Admiral's February 13, 2019 letter to the Association.

43.     As new information became known or new complaints were filed by Ozer, Admiral updated its coverage position through additional reservation of rights letters on multiple occasions. See Exhibit C, Exhibit D, Exhibit E, and Exhibit F, copies of Admiral's letters to the Association of May 31, 2019; January 7, 2020; December 15, 2022; and January 24, 2024 respectively.

44.     The defense of the Association was provided at all times under a reservation of rights, including a specific reservation of rights regarding the lack of insurance coverage for Ozer's mold-related personal injury claims against the Association.

**The Admiral Policies**

45.     Admiral issued a series of insurance policies to the Association (the "Admiral Policies") as depicted in the following chart:

| Policy No. | Effective Dates |
|---|---|
| 21-21268512-30[1] | 11/15/13 to 11/15/14 |
| 21-21268512-31 | 11/15/14 to 11/15/15 |
| 21-21268512-32 | 11/15/15 to 11/15/16 |
| 21-21268512-33 | 11/15/16 to 11/15/17 |
| 21-21268512-34 | 11/15/17 to 11/15/18 |
| 21-21268512-35 | 11/15/18 to 11/15/19 |

See Exhibit G, Exhibit H, Exhibit I, Exhibit J, Exhibit K, and Exhibit L, copies of the Admiral Policies.

_____

[1] This policy was the first insurance policy issued by Admiral to the Association.

46.     Subject to their applicable terms, conditions, and exclusions, each of the Admiral Policies provides commercial general liability coverage subject to limits of liability of $1,000,000 per occurrence for "bodily injury" and "property damage" and subject to a general aggregate limit of $2,000,000.

47.     The insuring agreement to Coverage A of the Admiral Policies states in pertinent part as follows:

SECTION I — COVERAGES
COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      Insuring Agreement

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

*       *       *

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an

8

"occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*    \*    \*

48.    Each of the Admiral Policies contains a "Fungi or Bacteria Exclusion" endorsement (CG 21 67 12 04) which modifies the coverage afforded by each of the Admiral Policies and states in pertinent part as follows:

A.    The following exclusion is added to Paragraph 2. Exclusions of Section I - Coverage A – Bodily Injury And Property Damage Liability:

2.    Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a.    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or

threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

\*          \*          \*

C.     The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

49.     The terms of the Admiral Policies that pertain to Admiral's duty to defend are modified by the endorsement entitled "Illinois Changes – Defense Costs" (Form IL 01 62 10 13) as follows:

A.     The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

1.     Section I of the Commercial General Liability, Commercial Liability Umbrella, Employment-related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

\*          \*          \*

Paragraph B. also applies to any other provision in the policy that sets forth a duty to defend.

B.  If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

**COUNT I**
**Declaratory Judgment**
**(No Coverage for Mold-Related Damages)**

50.  Admiral adopts and repeats the allegations of paragraphs 1 through 49 of its complaint as and for paragraph 50 as though the same were fully set forth herein.

51.  As of the August 29, 2022 decision from the trial court in the Underlying Lawsuit, the only remaining claims against the Association were Ozer's personal injury claims.

52.  According to her Complaint, Ozer's personal injury claims against the Association were based on allegations that her illness was causally related to mold exposure in her home.

53.  The only coverage afforded by the Admiral Policies that is pertinent to Ozer's claims against the Association is Coverage A., the coverage that, when applicable, applies to damages because of "bodily injury" that occurs during the policy period and is caused by an "occurrence" as such terms are defined by the policies.

54.  The coverage afforded under Coverage A of each of the Admiral Policies is subject to an exclusion entitled "Fungi or Bacteria Exclusion" that bars coverage for "'bodily injury'" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other

cause, event, material or product contributed concurrently or in any sequence to such injury or damage."

55.     As defined by the Admiral Policies, the term "fungi" means "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."

56.     As all damages awarded to Ozer in the Underlying Lawsuit were based on allegations of illness causally related to mold exposure in her home, the "Fungi or Bacteria Exclusion" contained in each of the Admiral Policies bars coverage for the damages awarded to Ozer in the Underlying Lawsuit.

57.     Because there is no coverage under the Admiral Policies and the policies bar coverage for the damages awarded to Ozer in the Underlying Lawsuit, Admiral owes no obligation to continue its defense of the Association with respect to the Underlying Lawsuit.

58.      Because there is no coverage under the Admiral Policies and the policies bar coverage for the damages awarded to Ozer in the Underlying Lawsuit, Admiral owes no obligation to indemnify the Association in relation to the damages awarded to Ozer in the Underlying Lawsuit.

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 against the Association declaring and awarding the following relief:

A.     Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for the Association with respect to the Underlying Lawsuit;

B.     Declaring that Admiral has no duty or obligation under the Admiral Policies to continue to defend the Association with respect to the Underlying Lawsuit;

C.     Declaring that Admiral has no duty or obligation under the Admiral Policies to indemnify the Association with respect to the judgment and the damages awarded against the Association in the Underlying Lawsuit; and

D.     For such other declaratory relief as the Court deems appropriate.

**COUNT II**
**Declaratory Judgment**
**(No Coverage for Damages that do not Qualify as "Bodily Injury")**

59.     Admiral adopts and repeats the allegations of paragraphs 1 through 49 of its complaint as and for paragraph 59 as though the same were fully set forth herein.

60.     As of the August 29, 2022 decision from the trial court in the Underlying Lawsuit, the only remaining claims against the Association were Ozer's personal injury claims.

61.     According to her Complaint, Ozer's personal injury claims against the Association were based on allegations that her illness was causally related to mold exposure in her home.

62.     The only coverage afforded by the Admiral Policies that is pertinent to Ozer's claims against the Association is Coverage A., the coverage that, when applicable, applies to damages because of "bodily injury" that occurs during the policy period and is caused by an "occurrence" as such terms are defined by the policies.

63.     The Admiral Policies do not afford coverage for damages awarded to Ozer based on her personal injury claims against the Association that to do not qualify as damages because of "bodily injury."

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 against the Association declaring and awarding the following relief:

A.     Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for the Association with respect to the Underlying Lawsuit;

B.     Declaring that Admiral has no duty or obligation under the Admiral Policies to continue to defend the Association with respect to the Underlying Lawsuit;

C.     Declaring that Admiral has no duty or obligation under the Admiral Policies to indemnify the Association with respect to the judgment and the damages awarded against the Association in the Underlying Lawsuit; and

D.     For such other declaratory relief as the Court deems appropriate.

**COUNT III**
**Declaratory Judgment**
**(No Coverage for Damages that were not Caused by an "Occurrence")**

64.     Admiral adopts and repeats the allegations of paragraphs 1 through 49 of its complaint as and for paragraph 64 as though the same were fully set forth herein.

65.     As of the August 29, 2022 decision from the trial court in the Underlying Lawsuit, the only remaining claims against the Association were Ozer's personal injury claims.

66.     According to her Complaint, Ozer's personal injury claims against the Association were based on allegations that her illness was causally related to mold exposure in her home.

67.     According to her Complaint, Ozer informed the Association of toxic mold in her home in or December 2016.

68.      According to her Complaint, the Association was notified by one of Ozer's doctors in December 2017 that she had a serious mold allergy and that care should be taken to remove mold from her home before she moved back in.

69. The only coverage afforded by the Admiral Policies that is pertinent to Ozer's claims against the Association is Coverage A., the coverage that, when applicable, applies to damages because of "bodily injury" that occurs during the policy period and is caused by an "occurrence" as such terms are defined by the policies.

70. "Occurrence" is defined by the Admiral Policies to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

71. According to Ozer, the Association was notified on multiple occasions that the failure to remedy the leaking issues in her unit would lead to mold growth and cause her to suffer injury.

72. Based on the information provided to the Association, some or all of Ozer's mold-related personal injuries were not caused by an "occurrence."

73. There is no coverage under the Admiral Policies for any damages awarded to Ozer that were not caused by an "occurrence."

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 against the Association declaring and awarding the following relief:

A. Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for the Association with respect to the Underlying Lawsuit;

B. Declaring that Admiral has no duty or obligation under the Admiral Policies to continue to defend the Association with respect to the Underlying Lawsuit;

C. Declaring that Admiral has no duty or obligation under the Admiral Policies to indemnify the Association with respect to the judgment and the damages awarded against the Association in the Underlying Lawsuit; and

D.   For such other declaratory relief as the Court deems appropriate.

**COUNT IV**
**Declaratory Judgment**
**(No Coverage Based on Prior Knowledge of Ozer's Injury)**

74.   Admiral adopts and repeats the allegations of paragraphs 1 through 49 of its complaint as and for paragraph 74 as though the same were fully set forth herein.

75.   The only coverage afforded by the Admiral Policies that is pertinent to Ozer's claims against the Association is Coverage A., the coverage that, when applicable, applies to damages because of "bodily injury" that occurs during the policy period and is caused by an "occurrence" as such terms are defined by the policies.

76.   As stated in the insuring agreement to Coverage A, there is no coverage for "bodily injury" if the insured, or an "employee" of the insured authorized to give or receive notice of an "occurrence" or claim, knew that "bodily injury" had occurred, in whole or in part, prior to the policy period.

77.   As also stated, if the insured, or any employee of the insured authorized to give or receive notice of an "occurrence" or claim, knew prior to the policy period that the "bodily injury" had occurred, then any continuation, change or resumption of that "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

78.   According to her Complaint, Ozer's personal injury claims against the Association were based on allegations that her illness was causally related to mold exposure in her home.

79.   According to her Complaint, Ozer informed the Association of toxic mold in her home in or December 2016.

80. According to her Complaint, the Association was notified by one of Ozer's doctors in December 2017 that she had a serious mold allergy and that care should be taken to remove mold from her home before she moved back in.

81. Based on the insuring agreement language, there is no coverage for Ozer's personal injury claims against the Association under any of the Admiral Policies that incepted after the Association knew that her injury had occurred, in whole or in part.

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 against the Association declaring and awarding the following relief:

A. Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for the Association with respect to the Underlying Lawsuit;

B. Declaring that Admiral has no duty or obligation under the Admiral Policies to continue to defend the Association with respect to the Underlying Lawsuit;

C. Declaring that Admiral has no duty or obligation under the Admiral Policies to indemnify the Association with respect to the judgment and the damages awarded against the Association in the Underlying Lawsuit; and

D. For such other declaratory relief as the Court deems appropriate.

## COUNT V
### Declaratory Judgment
### (No Coverage for Punitive Damages)

82. Admiral adopts and repeats the allegations of paragraphs 1 through 49 of its complaint as and for paragraph 82 as though the same were fully set forth herein.

83. The only coverage afforded by the Admiral Policies that is pertinent to Ozer's claims against the Association is Coverage A., the coverage that, when applicable, applies to

damages because of "bodily injury" that occurs during the policy period and is caused by an "occurrence" as such terms are defined by the policies.

84.     In addition to compensatory damages, Ozer was awarded $50,000 in punitive damages based on her claims against the Association under Count I of the Complaint.

85.     The punitive damages award was based on Ozer's allegations regarding the Association's allegedly willful and wanton conduct.

86.     Damages awarded on the basis of willful and wanton conduct do not qualify as damages caused by an "occurrence."

87.     There is no coverage under the Admiral Policies for any damages awarded to Ozer that were not caused by an "occurrence."

88.     In addition, insurance coverage for punitive damages is barred by public policy in Illinois.

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 against the Association declaring and awarding the following relief:

A.     Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for the Association with respect to the Underlying Lawsuit;

B.     Declaring that Admiral has no duty or obligation under the Admiral Policies to indemnify the Association with respect to the punitive damages awarded against the Association in the Underlying Lawsuit; and

C.     For such other declaratory relief as the Court deems appropriate.

## COUNT VI
### Declaratory Judgment
### (Reimbursement of Defense Costs)

89.     Admiral adopts and repeats the allegations of paragraphs 1 through 49 of its complaint as and for paragraph 89 as though the same were fully set forth herein.

90.     The only coverage afforded by the Admiral Policies that is pertinent to Ozer's claims against the Association is Coverage A., the coverage that, when applicable, applies to damages because of "bodily injury" that occurs during the policy period and is caused by an "occurrence" as such terms are defined by the policies.

91.     As stated in the insuring agreement to Coverage A, Admiral will have the right and duty to defend an insured against any "suit" seeking damages because of "bodily injury" or "property damage" to which the insurance applies.

92.     As stated in the insuring agreement to Coverage A, Admiral will have no duty to defend an insured against any "suit" seeking damages for "bodily injury" or "property damage" to which the insurance does not apply.

93.     Admiral's defense obligations under each of the Admiral Policies are amended by the endorsement entitled "Illinois Changes - Defense Costs" and found on Form IL 0162 09 08.

94.     Pursuant to the language found on that endorsement, if Admiral initially defends an insured or pays for an insured's defense but later determines that the claim is not covered, Admiral will have the right to be reimbursed for the defense costs it incurred.

95.     Admiral's right to reimbursement will only apply to defense costs incurred after it notifies the insured that there may not be coverage, and that Admiral is reserving its rights to terminate the defense and seek reimbursement for defense costs.

96.     Admiral notified the Association in its February 13, 2019 position letter and again in every subsequent position letter that Admiral was reserving the right to seek reimbursement of any defense costs incurred in the defense of the Association if it was determined that there is no coverage under the Admiral Policies for the claims asserted in the Underlying Lawsuit.

97.     As of the August 29, 2022 decision from the trial court in the Underlying Lawsuit, the only remaining claims against the Association were Ozer's mold-related personal injury claims.

98.     There is no coverage under the Admiral Policies for Ozer's mold-related personal injury claims against the Association.

99.     Based on the language of the cited endorsement, Admiral is entitled to reimbursement of defense costs incurred in the defense of the Association in the Underlying Lawsuit from August 29, 2022 forward.

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 against the Association declaring and awarding the following relief:

A.     Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for the Association with respect to the Underlying Lawsuit;

B.     Declaring that Admiral has no duty or obligation under the Admiral Policies to indemnify the Association with respect to the judgment and the damages awarded against the Association in the Underlying Lawsuit;

C.     Declaring that Admiral is entitled to reimbursement of defense costs incurred in the defense of the Association as of the date that the Underlying Lawsuit no longer presented claims covered under the Admiral Policies; and

D.      For such other declaratory relief as the Court deems appropriate.


Dated:  May 24, 2024

/s/      Brian M. Reid
Brian M. Reid
LITCHFIELD CAVO, LLP
303 West Madison Street, Suite 300
Chicago, IL 60606
T: 312.781.6617 (Reid)
F: 312.781.6630
Reid@LitchfieldCavo.com

*Counsel for Admiral Indemnity Company*
